UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GREG STEVEN ELOFSON,<br><br>Plaintiff,<br><br>v.<br><br>STEPHANIE BIVENS, et al.,<br><br>Defendants. | Case No.  15-cv-05761-BLF<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL; DENYING PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER; AND GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**<br><br>[Re: ECF 8, 18, 20] |

In this action, Plaintiff Greg Steven Elofson, proceeding pro se, challenges Arizona state court orders placing his father, Milo Elofson, under the guardianship and conservatorship of a licensed Arizona fiduciary named Stephanie McCollum. Plaintiff sues McCollum, McCollum's attorney, Milo's court-appointed attorney, Plaintiff's own former attorney, and others for their conduct relating to the Arizona guardianship and conservatorship proceedings.

Plaintiff seeks appointment of counsel, a temporary restraining order ("TRO"), and leave to file an amended complaint. For the reasons discussed below, Plaintiff's motion for appointment of counsel is DENIED; his application for a TRO is DENIED; and his motion for leave to file an amended complaint is GRANTED.

**I.   BACKGROUND**

The following facts are taken from Plaintiff's complaint, from Arizona state court records attached as exhibits to Plaintiff's application for TRO, and from the docket of a similar action that Plaintiff filed in the United States District Court for the Central District of California.

<u>Plaintiff Appointed as Temporary Guardian (August 2013)</u>

In August 2013, the Superior Court of Arizona, Maricopa County, appointed Plaintiff as temporary guardian for his father, Milo, who suffers from vascular dementia resulting from strokes. The court also appointed Defendant Paul Theut as Milo's attorney.

McCollum Appointed as Conservator (January 2014)

On January 16, 2014, the superior court appointed Defendant Stephanie McCollum, a licensed Arizona fiduciary, as Milo's conservator.  The transcript of the January 16, 2014 hearing reflects a concern regarding dissipation of Milo's assets, including a $70,000 quasi loan to Milo's step-daughter, Defendant Pam Dougherty-Elofson.  In February and March 2014, McCollum, represented by her attorney, Defendant Lawrence Scaringelli, filed documents in the superior court alleging that Plaintiff was frustrating McCollum's efforts to obtain an accounting of Milo's assets and that Plaintiff had threatened to move Milo out of state.  The Arizona superior court ordered that Milo could not be removed from Arizona without leave of court.  Plaintiff then unsuccessfully moved to rescind the conservatorship order.

In July 2014, Plaintiff sought leave of court to move Milo to California, where Plaintiff resides.  That request was denied.  During the same time frame, McCollum filed documents alleging financial irregularities in Milo's accounts.  The superior court appointed a guardian ad litem to act for Milo while Plaintiff's fitness for guardianship was evaluated.

In October 2014, McCollum arranged for Milo to be placed in the Emeritus Chandler facility in Arizona.  Plaintiff then traveled with Milo to California.

Plaintiff Found in Contempt and Replaced as Guardian by McCollum (December 2014)

On December 18, 2014, the superior court found Plaintiff to be in civil contempt of court for failing to comply with court orders, including an order to provide a complete accounting.  The court also stated that it appeared Plaintiff may have moved Milo out of state.  The court suspended Plaintiff's appointment as guardian, appointed McCollum as temporary guardian, and ordered Plaintiff to return Milo to Arizona if Milo had been moved out of state.

On January 7, 2015, the court appointed McCollum as permanent guardian of Milo and discharged the guardian ad litem.

Plaintiff and Milo Reside in California (January 2015 – September 2015)

Meanwhile, Plaintiff and Milo were residing in California.  In January 2015, Plaintiff contacted Monterey County Social Services for help in obtaining a part-time caregiver for Milo. Monterey County Social Services contacted Monterey County Adult Protective Services, which in

turn contacted the Monterey Police Department. The decision to contact the police was made by Monterey County Adult Protective Services employee Steven Mudd, who is named as a defendant in this action. In February 2015, Monterey police officers forcibly removed Milo from the home where he and Plaintiff were staying and took him to a medical center. Plaintiff retrieved Milo from the medical center and continued to reside with him in California.

On August 12, 2015, the Arizona superior court issued a fiduciary arrest warrant for Plaintiff.

<u>Milo is Returned to Arizona (September 2015)</u>

On September 9, 2015, Plaintiff took Milo to Defendant Community Memorial Hospital in Ventura, California, for evaluation. The hospital communicated with McCollum and her attorney, Scaringelli, and thereafter refused Plaintiff access to Milo on the ground that he had "kidnapped" Milo from Arizona. Two weeks later, Scaringelli emailed Plaintiff to say that Milo was back in Arizona.

<u>Plaintiff's Prior Efforts to Seek Review of Arizona State Court Rulings</u>

Plaintiff filed unsuccessful appeals of the superior court's orders in the Arizona Court of Appeal and filed an unsuccessful petition for review in the Arizona Supreme Court.

On August 19, 2015, Plaintiff, proceeding pro se, filed suit in the United States District Court for the Central District of California, asserting federal and state law claims against most of the individuals who were involved in the Arizona state guardianship and conservatorship proceedings, including two Arizona Probate Court Commissioners. *See Elofson v. Bivens*, Case No. 2:15-cv-06332-PA-KS. The district court denied Plaintiff's request for appointment of counsel on a number of grounds, including Plaintiff's ability to articulate his claims adequately, significant questions regarding venue, the apparent lack of personal jurisdiction over the defendants, and inadequacies of the legal theories advanced by Plaintiff. Civil Minutes, ECF 10 in Case No. 2:15-cv-06332-PA-KS. The district court denied Plaintiff's application for a TRO on similar grounds, citing improper venue, lack of personal jurisdiction over the defendants, and failure to establish likelihood of success on the merits of the claims. Civil Minutes, ECF 8 in Case No. 2:15-cv-06332-PA-KS. Plaintiff thereafter dismissed the Central District action voluntarily.

3

Notice of Voluntary Dismissal, ECF 11 in Case No. 2:15-cv-06332-PA-KS.

<u>Present Lawsuit</u>

On December 16, 2015, Plaintiff filed the present action, asserting many of the same claims against many of the same defendants who were named in the Central District action. *See* Compl., ECF 1. Plaintiff sues Stephanie Bivens (his former attorney), McCollum (Milo's guardian and conservator), Scaringelli (McCollum's attorney), Theut (Milo's court-appointed attorney), Mudd (employee of Monterey County Adult Protective Services), Pam Dougherty-Elofson (Milo's step-daughter), and Community Memorial Hospital of Ventura County.

Plaintiff asserts the following claims under federal law: claims for relief from Arizona state court orders under Federal Rule of Civil Procedure 60 (Claims 1-4); claims under 42 U.S.C. § 1983 for deprivation of due process and free association rights guaranteed by the Fourteenth Amendment (Claims 12, 16, 17, and 19); a claim of human trafficking (Claim 13); and a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. (Claim 14). Plaintiff also asserts a number of claims under California law: breach of fiduciary duties owed to Milo (Claims 5 and 8); attorney malpractice (Claims 6-7 ); defamation (Claims 9, 18, and 20); negligent infliction of emotional distress (Claim 10); elder abuse (Claim 11); and abuse of process (Claim 15).

Each of Plaintiff's claims concludes with the following allegation or a substantially similar allegation: "Standing: Greg Elofson is an interested person, has a reversionary interest in Milo Elofson's estate, was Milo Elofson's Guardian, was directly affected, and is Milo Elofson's Durable Power of Attorney." Compl. ¶ 298, ECF 1. In his prayer, Plaintiff requests that this Court set aside as null and void the Arizona state court guardianship and conservatorship orders. Plaintiff also seeks compensatory, statutory, and punitive damages, as well as attorneys' fees and costs.

**II. MOTION FOR APPOINTMENT OF COUNSEL**

Plaintiff seeks appointment of counsel to represent him in this case. "Generally, a person has no right to counsel in civil actions." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). "However, a court may under 'exceptional circumstances' appoint counsel for indigent civil

1  litigants pursuant to 28 U.S.C. § 1915(e)(1)." *Id.* In making a determination whether exceptional
2  circumstances exist, the court must consider both the ability of the plaintiff to articulate his claims
3  pro se and the plaintiff's likelihood of success on the merits. *Id.* "Neither of these considerations
4  is dispositive and instead must be viewed together." *Id.*

5      Plaintiff's filings identify him as Greg Elofson, Ph.D., J.D. Thus it appears that Plaintiff
6  has both a doctorate and a law degree. His complaint and other filings demonstrate that he is able
7  to explain what relief he seeks and why he believes that he is entitled to such relief. Because
8  Plaintiff is able to articulate his claims adequately while proceeding pro se, this consideration
9  weighs against a finding of exceptional circumstances.

10      Equally importantly, Plaintiff is not likely to succeed on the merits of his claims. As
11  discussed in detail below, Plaintiff asserts federal question jurisdiction in this case. However, his
12  federal claims depend upon the asserted invalidity of the Arizona state court orders regarding
13  Milo's guardianship and conservatorship, which this Court lacks jurisdiction to review.

14      Plaintiff's motion for appointment of counsel is DENIED.

### III.   APPLICATION FOR TRO

16      Plaintiff has filed an ex parte application for a TRO. He requests that this Court issue an
17  order, without notice to Defendants, to: (1) enjoin Defendants from exercising powers arising
18  from their Arizona state court appointments as guardian, conservator, and attorney for Milo; (2)
19  enjoin the effect of the Arizona state court order nullifying Plaintiff's durable power of attorney
20  for Milo; (3) compel Defendants to divulge Milo's location and medical status; (4) enjoin the
21  Arizona state court fiduciary arrest warrant for Plaintiff; (5) enjoin Defendants from using any of
22  Milo's assets; and (6) compel Defendants to turn over Milo's assets to Plaintiff.

#### A.   Notice

24      As an initial matter, a Court may issue a TRO without notice to the adverse party *only* if
25  (1) "specific facts in an affidavit or a verified complaint" show that immediate and irreparable
26  injury will occur before the adverse party may be heard and (2) the movant's attorney certifies in
27  writing what efforts were made to give notice and the reasons why notice should not be required.
28  Fed. R. Civ. P. 65(b). In addition, this district's Civil Local Rules require that "[u]nless relieved

1  by order of a Judge for good cause shown, on or before the day of an ex parte motion for a
2  temporary restraining order, counsel applying for the temporary restraining order must deliver
3  notice of such motion to opposing counsel or party." Civ. L.R. 65-1(b).
4        Plaintiff's brief submitted in support of his TRO application represents that on Sunday,
5  February 22, 2016[1], Plaintiff notified three of the defendants – Theut, McCollum, and Scaringelli
6  – that Plaintiff would be applying for a TRO. However, Plaintiff requests that the Court issue the
7  requested TRO immediately on an ex parte basis in order to preserve Milo's life. TRO Applic. ¶¶
8  110-111. The brief containing the above representations is not an affidavit or verified complaint
9  as required by Rule 65(b). However, after filing the TRO application, Plaintiff filed an
10 "Addendum and Status update to pending TRO" and an "Urgent Addendum to TRO," both signed
11 by Plaintiff under penalty of perjury. *See* Addendum, ECF 21; Urgent Addendum, ECF 22. The
12 Addendum and Urgent Addendum assert that Milo's health is extremely fragile and that
13 Defendants are not providing him with appropriate medical care. The Court concludes that the
14 Addendum and Urgent Addendum satisfy the requirements of Rule 65(b) and thus it will consider
15 Plaintiff's application for a TRO on an ex parte basis.[2]

16     **B.**    **Legal Standard**

17       The substantive standard for issuing a TRO is identical to the standard for issuing a
18 preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832,
19 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp. 1320,
20 1323 (N.D. Cal. 1995). A preliminary injunction is a matter of equitable discretion and is "an
21 extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled
22 to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A
23 plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the
24 merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that

---

[1] February 22, 2016 was a Monday, not a Sunday.

[2] While the Court has considered Plaintiff's Addendum and Urgent Addendum in evaluating his application for a TRO, Plaintiff is advised that in the future, unauthorized serial filings such as these will be stricken.

6

the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. Alternatively, an injunction could issue where "the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," provided that the plaintiff can also demonstrate the other two *Winter* factors. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011) (citation and internal quotation marks omitted). Under either standard, the plaintiff bears the burden of making a clear showing on these elements and on entitlement to the extraordinary remedy of preliminary injunctive relief. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

### C. Discussion

The Court begins its analysis by addressing likelihood of success on the merits, which is a prerequisite to injunctive relief under any formulation of the test. Plaintiff's complaint alleges subject matter jurisdiction based upon federal question.[3] *See* Compl. ¶ 1, ECF 1. However, the Court lacks subject matter jurisdiction over all of Plaintiff's federal claims for the reasons discussed below.

Under the *Rooker-Feldman* doctrine, a federal district court has no authority to review the final determinations of a state court in judicial proceedings. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923). "The purpose of the doctrine is to protect state judgments from collateral federal attack. Because district courts lack power to hear direct appeals from state court decisions, they must decline jurisdiction whenever they are 'in essence called upon to review the state court decision.'" *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001) (quoting *Feldman*, 460 U.S. at 482 n.16). The *Rooker-Feldman* doctrine precludes not only review of decisions of the state's highest court, but also those of its lower courts. *See Dubinka v. Judges of Superior Court*, 23 F.3d 218, 221 (9th Cir. 1994).

"*Rooker-Feldman* may also apply where the parties do not directly contest the merits of a state court decision, as the doctrine prohibits a federal district court from exercising subject matter

---

[3] It does not appear that Plaintiff could assert diversity jurisdiction, because Defendants Mudd and Community Memorial Hospital of Ventura County appear to be California residents.

jurisdiction over a suit that is a de facto appeal from a state court judgment." *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) (internal quotation marks and citation omitted). "A federal action constitutes such a de facto appeal where claims raised in the federal court action are inextricably intertwined with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." *Id.* (internal quotation marks and citation omitted).

All of Plaintiff's federal claims depend upon the asserted invalidity of the Arizona state court orders regarding Milo's guardianship and conservatorship. Claims 1-4, brought under Federal Rule of Civil Procedure 60, directly request that this Court set aside the Arizona state court orders as null and void. Claims 12, 16, 17, and 19 assert that the Arizona state court proceedings deprived Plaintiff and Milo of due process and free association rights protected under the Fourteenth Amendment. Claims 13 and 14 allege that Defendants' control over Milo's assets and person pursuant to the Arizona state court orders constitute human trafficking and racketeering activity. All of these claims are inextricably intertwined with the Arizona state court proceedings and resulting orders.

Most, if not all, of Plaintiff's California state law claims likewise are intertwined with the Arizona state court rulings. If it were to determine that any of Plaintiff's California state law claims are not precluded under the *Rooker-Feldman* doctrine, this Court would decline to exercise supplemental jurisdiction over those claims upon dismissal of the federal claims. *See* 28 U.S.C. § 1367(c).

It is apparent from Plaintiff's filings that he is extremely concerned about his father's health and well-being. Plaintiff appears to be sincerely convinced that an injustice was done by Defendants and by the Arizona state courts. However, this Court simply lacks subject matter jurisdiction to grant Plaintiff the relief that he seeks. Thus Plaintiff cannot demonstrate a likelihood of success on the merits of his claims, and his application for a TRO must be DENIED.

## IV. MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

This case initially was assigned to Magistrate Judge Howard R. Lloyd. On January 15, 2016, Judge Lloyd issued an Order to Show Cause why this case should not be dismissed for

improper venue. *See* Order to Show Cause, ECF 6. Judge Lloyd discussed each possible basis for venue under 28 U.S.C. § 1391, governing "Venue generally," and concluded that this district is an improper forum for Plaintiff's claims. Judge Lloyd directed Plaintiff to file a statement in response to the Order to Show Cause no later than February 12, 2016. *Id.* Judge Lloyd later continued the deadline for Plaintiff's show-cause response to February 19, 2016.

This case was reassigned to the undersigned judge on February 16, 2016. On February 18, 2016, Plaintiff filed a timely response to the Order to Show Cause along with a motion for leave to file an amended complaint. In the response and motion for leave to amend, Plaintiff asserts among other things that venue is proper in this district under the special venue provisions of the RICO statutes. Plaintiff requests leave to file an amended complaint expanding on his RICO claim and venue allegations.

Because no defendant has responded to the complaint, Plaintiff is entitled to amend as of right. *See* Fed. R. Civ. P. 15(a)(1)(B). Accordingly, the motion for leave to amend is GRANTED. Although Plaintiff's expressed purpose for amendment is to address the issue of venue, Plaintiff also should consider the impact of the *Rooker-Feldman* doctrine on this Court's subject matter jurisdiction when deciding whether or how to amend his complaint. Plaintiff is reminded that under this Court's Civil Local Rules, "[a]ny party filing or moving to file an amended pleading must reproduce the entire proposed pleading and may not incorporate any part of a prior pleading by reference." Civ. L.R. 10-1.

## V.  ORDER

For the foregoing reasons,

(1) Plaintiff's motion for appointment of counsel is DENIED;

(2) Plaintiff's application for a TRO is DENIED; and

(3) Plaintiff's motion for leave to file an amended complaint is GRANTED. Any amended complaint shall be filed on or before March 9, 2016.

Dated: February 24, 2016

_____
BETH LABSON FREEMAN
United States District Judge