1

2

3

4

5        **UNITED STATES DISTRICT COURT**

6        **NORTHERN DISTRICT OF CALIFORNIA**

7        **SAN JOSE DIVISION**

8

9    GREG STEVEN ELOFSON,                    Case No.  15-cv-05761-BLF

            Plaintiff,

10                                            **ORDER GRANTING MOTIONS TO**
                                             **DISMISS FIRST AMENDED**
11       v.                                   **COMPLAINT WITHOUT LEAVE TO**
                                             **AMEND**
12   STEPHANIE BIVENS, et al.,

            Defendants.                       [Re:  ECF 48, 51, 70, 82, 102, 106]
13

14

15       Plaintiff Greg Steven Elofson ("Elofson"), proceeding pro se, filed this action to challenge

16   Arizona state court orders relating to the guardianship and conservatorship of his father, Milo

17   Elofson ("Milo").[1]  Elofson seeks relief from those orders under Federal Rule of Civil Procedure

18   60, and he additionally asserts numerous federal and state law claims against persons who were

19   either involved in the Arizona proceedings or helped return Milo to Arizona after Elofson moved

20   him out of state in violation of court orders.

21       Before the Court are motions to dismiss filed by six of the seven defendants named in the

22   operative first amended complaint ("FAC").[2]  For the reasons discussed below, Elofson's claims

23   against all moving parties are DISMISSED WITHOUT LEAVE TO AMEND.

24

25   _____

26   [1] The Court intends no disrespect in referring to Milo Elofson by his first name.  It does so only to
     distinguish him from Plaintiff Greg Elofson.

27   [2] It does not appear that the seventh defendant, Stephanie McCollum, has been served with the
     summons and complaint.  That circumstance will be addressed in a separate order.
28

United States District Court
Northern District of California

## I.  BACKGROUND

This action arises from the circumstances surrounding the conservatorship of Elofson's father, Milo.  Elofson claims that Milo suffered from vascular dementia and that Milo's step-daughter, Pam Dougherty-Elofson, abused Milo's trust by withdrawing $74,000 from Milo's bank account to pay off the mortgage on her house.  FAC ¶¶ 130-31, ECF 29.  When Milo discovered the missing funds, he asked Elofson for help in figuring out what had happened.  *Id.* ¶ 134.  Elofson retained an attorney, Stephanie Bivens, to advise him about protecting Milo's finances from Dougherty-Elofson.  *Id.* ¶ 138.  Bivens suggested that Milo be conserved and place under Elofson's guardianship.  *Id.* ¶ 139.  However, Bivens later informed Elofson that he could not be appointed as Milo's conservator because he could not be bonded.  *Id.* ¶ 146.  Elofson claims that he decided to proceed with a petition for temporary guardianship of Milo, but not a conservatorship.  *Id.* ¶¶ 151-57.  However, according to Elofson, Bivens nonetheless filed a petition for both permanent guardianship and permanent conservatorship of Milo and forged Elofson's signature on that document.  *Id.* ¶ 158.

Elofson states that he did not know that Bivens had filed a forged petition requesting both guardianship and conservatorship of Milo.  FAC ¶ 171.  However, he questioned other aspects of Bivens' representation, and his relationship with her began to deteriorate.  *Id.* ¶¶ 164-169.  He ultimately fired her.  *Id.* ¶ 175.  During the same time frame, the Arizona court appointed an attorney named Paul Theut to represent Milo and appointed Elofson as Milo's temporary guardian.  *Id.* ¶¶ 168, 172.  The court later removed Elofson as Milo's guardian and appointed a licensed Arizona fiduciary named Stephanie McCollum as Milo's guardian and conservator.  *Id.* ¶¶ 205, 210, 306.  Elofson claims that Theut and Bivens, along with McCollum and her attorney, Lawrence Scaringelli, committed fraud on Elofson and the Arizona court throughout the guardianship and conservatorship proceedings.  *Id.* ¶¶ 168-306.  Elofson also claims that he was denied due process in the Arizona state court proceedings, asserting among other things that he was not given adequate notice of certain hearings and other events.  *Id.*

During the course of the Arizona proceedings, Elofson requested leave of court to move Milo to California, where Elofson resided.  FAC ¶ 269, ECF 29.  That request was denied.  *Id.*

United States District Court
Northern District of California

1    Elofson nonetheless "traveled, with Milo, to California," FAC ¶ 302, and took up residence with

2    him there, FAC ¶ 307.  The Arizona state court found Elofson in civil contempt of court.  FAC ¶

3    304.

4            In January 2015, Elofson contacted Monterey County Social Services to request a part-

5    time caregiver for Milo.  FAC ¶ 307, ECF 29.  Monterey County Social Services contacted

6    Monterey County Adult Protective Services, which contacted McCollum.  *Id.* ¶¶ 312-13.  Elofson

7    claims that McCollum and her attorney, Scaringelli, informed Monterey County Adult Protective

8    Services that Elofson had financially abused Milo and was responsible for missing monies from

9    Milo's estate.  *Id.* ¶ 313.  In February 2015, Steven Mudd of Monterey County Adult Protective

10   Services, Monterey Police officers, and medical personnel went to Elofson's residence and

11   transported Milo to Natividad Medical Center.  *Id.* ¶¶ 314-17.[3]  Elofson removed Milo from

12   Natividad the following day.  *Id.*  The Arizona state court subsequently issued a fiduciary arrest

13   warrant for Elofson.  *Id.* ¶ 320.

14           In September 2015, Elofson took Milo to Community Memorial Hospital ("Community

15   Hospital") in Ventura, California, for evaluation "because of Milo's strong urge to wander

16   throughout that night."  FAC ¶ 321-22, ECF 29.  Community Hospital communicated with

17   McCollum and her attorney, Scaringelli, and was informed that Elofson had kidnapped Milo.  *Id.* ¶

18   326.  Community Hospital put Milo under twenty-four hour security oversight with standing

19   orders to prevent Elofson from entering the hospital or seeing Milo.  *Id.* ¶¶ 329-332.  Two weeks

20   later, Scaringelli emailed Elofson to inform him that Milo was back in Arizona.  *Id.* ¶ 333.

21           Elofson claims that although Milo was in good physical health when he arrived at

22   Community Hospital, he deteriorated quickly once removed from Elofson's care.  FAC ¶¶ 331-36,

23   ECF 26.  At the time Elofson filed the FAC, he was gravely concerned for his father, alleging that

24   Milo was suffering from bed sores, a kidney infection, dehydration, and starvation.  *Id.* ¶ 335.  The

25   FAC asserts claims against Dougherty-Elofson (Milo's step-daughter), Bivens (Elofson's former

26   attorney), Theut (Milo's court-appointed attorney), McCollum (Milo's guardian and conservator),

27

28   _____
     [3] The FAC alleges that this event occurred in February 2014, but this appears to be a typographical error.

3

1   Scaringelli (McCollum's attorney), Mudd (employee of Monterey County Adult Protective

2   Services), and Community Hospital.

3       The FAC, spanning 168 pages and including 685 paragraphs of allegations, asserts twenty-

4   one claims:  (1) relief from the Arizona state court guardianship order; (2) relief from the Arizona

5   state court conservatorship order; (3) relief from the Arizona state court conservatorship order;

6   (4) relief from the Arizona state court guardianship order; (5) breach of duty; (6) attorney

7   malpractice; (7) attorney malpractice; (8) breach of fiduciary duty; (9) defamation; (10) negligent

8   infliction of emotional distress; (11) financial elder abuse; (12) violation of civil rights under 42

9   U.S.C. § 1983; (13) human trafficking in violation of 18 U.S.C. § 1595; (14) violations of the

10  Racketeer Influenced and Corrupt Organizations Act ("RICO"); (15) abuse of process;

11  (16) violation of civil rights under 42 U.S.C. § 1983; (17) violation of civil rights under 42 U.S.C.

12  § 1983; (18) defamation; (19) violation of civil rights under 42 U.S.C. § 1983; (20) defamation;

13  and (21) wire fraud.  The prayer requests that this Court set aside as null and void the Arizona

14  state court guardianship and conservatorship orders and award compensatory, statutory, and

15  punitive damages, as well as attorneys' fees and costs.

16      Approximately three months after Elofson filed the FAC, he informed the Court that Milo

17  had passed away and requested that the Court order an autopsy to determine the cause of death.

18  Pl.'s Emergency Ex Parte Motion to Compel Emergency Autopsy, ECF 80.  The Court denied that

19  request after determining that it lacks authority to order the Pinal County, Arizona Medical

20  Examiner to perform an autopsy.  Order Denying Plaintiff's Emergency Ex Parte Motion to

21  Compel Autopsy, ECF 84.

22      Defendants Dougherty-Elofson, Bivens, Theut, Mudd, Community Hospital, and

23  Scaringelli seek dismissal of the FAC under various theories, discussed below.  In addition,

24  Scaringelli has filed a special motion to strike under California Code of Civil Procedure § 425.16.

25  The Court addresses the motions of each defendant in turn.

26  **II.   DOUGHERTY-ELOFSON**

27      Elofson sues Dougherty-Elofson, Milo's step-daughter, for breach of duty (Claim 5),

28  trafficking (Claim 13), and RICO violations (Claim 14).  She seeks dismissal under Federal Rule

United States District Court
Northern District of California

4

1    of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  In support of her motion, she submits

2    a declaration stating that she is a resident of Arizona; she has not lived in, traveled to, or been

3    physically present in California in more than twenty years; and she does not conduct business in

4    California.  Dougherty-Elofson Decl. ¶¶ 2-4, ECF 51-1.

5          When a defendant raises a challenge to personal jurisdiction, the plaintiff bears the burden

6    of establishing that jurisdiction is proper.  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir.

7    2015).  The plaintiff may meet that burden by submitting affidavits and discovery materials.  *Doe*

8    *v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).  "Where, as here, the defendant's motion is

9    based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima

10   facie showing of jurisdictional facts to withstand the motion to dismiss."  *Ranza*, 793 F.3d at 1068

11   (internal quotation marks and citation omitted).  "[T]he plaintiff cannot simply rest on the bare

12   allegations of its complaint," but when evaluating the plaintiff's showing, the court must accept

13   uncontroverted allegations in the complaint as true and resolve factual disputes created by

14   conflicting affidavits in the plaintiff's favor."  *Schwarzenegger v. Fred Martin Motor Co.*, 374

15   F.3d 797, 800 (9th Cir. 2004) (internal quotation marks and citation omitted).  "However,

16   plaintiff's evidence must be admissible."  *Joseph Saveri Law Firm, Inc. v. Michael Criden P.A.*,

17   No. C-14-01740 (EDL), 2014 WL 3673313, at *2 (N.D. Cal. July 23, 2014) (citing *Nicosia v. De*

18   *Rooy*, 72 F. Supp. 2d 1093, 1097 (N.D. Cal. 1999)).

19         Elofson asserts that Dougherty-Elofson is subject to personal jurisdiction in this Court

20   under both California's long-arm statute and RICO's "ends of justice" provision, 18 U.S.C. §

21   1965(b).  The Court addresses those arguments in turn.

22   **A.    California's Long-Arm Statute**

23         Where no applicable federal statute governs personal jurisdiction, "the law of the state in

24   which the district court sits applies."  *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements*

25   *Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).  "California's long-arm statute allows courts to exercise

26   personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the

27   United States Constitution."  *Id.*  "[D]ue process requires that the defendant 'have certain

28   minimum contacts' with the forum state 'such that the maintenance of the suit does not offend

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1    traditional notions of fair play and substantial justice.'" *Ranza*, 793 F.3d at 1068 (quoting *Int'l*

2    *Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks and citation

3    omitted).  "The strength of contacts required depends on which of the two categories of personal

4    jurisdiction a litigant invokes:  specific jurisdiction or general jurisdiction." *Id.* at 1068.  General

5    jurisdiction lies when the defendant's contacts "are so continuous and systematic as to render [it]

6    essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014)

7    (internal quotation marks and citation omitted).  A nonresident that is subject to the court's general

8    jurisdiction may be sued for claims "arising from dealings entirely distinct" from the forum-

9    related activities. *Id.* (internal quotation marks and citation omitted) (emphasis omitted).  In

10   contrast, specific jurisdiction exists when the defendant's contacts with the forum state are more

11   limited but the plaintiff's claims arise out of or relate to those contacts. *Id.* at 754.  General

12   jurisdiction is referred to as "all-purpose" jurisdiction whereas specific jurisdiction is referred to as

13   "case-specific" or "case-linked" jurisdiction. *Ranza*, 793 F.3d at 1069 n.2 (citations omitted).

14       Elofson does not argue that Dougherty-Elofson is subject to general jurisdiction in

15   California – he argues only that she is subject to specific jurisdiction.  Courts in the Ninth Circuit

16   employ a three-prong test when determining whether a nonresident defendant may be subject to

17   specific personal jurisdiction in a forum:

18       (1) The non-resident defendant must purposefully direct his activities or
19       consummate some transaction with the forum or resident thereof; or perform some
         act by which he purposefully avails himself of the privilege of conducting activities
20       in the forum, thereby invoking the benefits and protections of its laws;

21       (2) the claim must be one which arises out of or relates to the defendant's forum-
         related activities; and

22       (3) the exercise of jurisdiction must comport with fair play and substantial justice,
23       i.e. it must be reasonable.

24   *Schwarzenegger*, 374 F.3d at 802.  "The plaintiff bears the burden of satisfying the first two

25   prongs of the test." *Id.*  If the plaintiff succeeds in doing so, the burden shifts to the defendant to

26   "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable."

27   *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (quoting *Burger*

28   *King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

### 1.    Purposeful Direction or Availment

"Purposeful direction" and "purposeful availment" are two distinct concepts, the former most often used in suits sounding in tort and the latter in suits sounding in contract. *Schwarzenegger*, 374 F.3d at 802.  Purposeful availment may be found when the defendant executes or performs a contract in the forum state or otherwise "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (internal quotation marks and citation omitted).  "In return for these benefits and protections, a defendant must – as a quid pro quo – submit to the burdens of litigation in that forum." *Id.* (internal quotation marks and citation omitted).  "A showing that a defendant purposefully directed his conduct toward a forum state, by contrast, usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id.* at 803.  "The Supreme Court has held that due process permits the exercise of personal jurisdiction over a defendant who purposefully directs his activities at residents of a forum, even in the absence of physical contacts with the forum." *Id.* (internal quotation marks, citation, and brackets omitted).

Here, a purposeful direction analysis is most appropriate.  Elofson sues Dougherty-Elofson for breach of fiduciary duty – a tort – and for statutory claims that are more akin to tort than contract.  In asserting those claims, Elofson does not contend that Dougherty-Elofson availed herself of the privileges of doing business in California, but rather that she committed intentional acts aimed at California.

Purposeful direction is evaluated under the "effects" test first articulated in *Calder v. Jones*, 465 U.S. 783 (1984).  Under that test, "a defendant purposefully directed his activities at the forum if he:  (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (internal quotation marks and citation omitted).  Analysis of those factors must focus on the "defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).

### a.      Commission of an Intentional Act

Under the *Calder* effects test, Elofson first must demonstrate that Dougherty-Elofson committed an intentional act.  In this context, "intent" refers to "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act."  *Schwarzenegger*, 374 F.3d at 806.  Elofson identifies three intentional acts by Dougherty-Elofson:  emailing Elofson to solicit his agreement to embezzle Milo's funds, embezzlement of the funds, and speaking with Elofson by telephone to solicit his agreement to embezzle more of Milo's funds.  Pl.'s Opp. at 12-13, ECF 69.  All three of those actions constitutes intentional acts under the effects test.

### b.      Expressly Aimed at the Forum State

Elofson has not shown, however, how those intentional acts were aimed at California.  It is clear from the record that Milo resided in Arizona at the relevant time.  Thus the conduct described by Elofson boils down to one Arizona resident's solicitations to embezzle, and actual embezzlement of, the funds of another Arizona resident.  Elofson suggests that the conduct was directed at California because it violated a number of California statutes, including California Penal Code § 503 (defining the term "embezzlement"), California Penal Code § 515 (providing that the elder or dependent status of a victim may be an aggravating circumstance), California Probate Code § 4231.5 (attorney in fact's breach of duty), and California Welfare and Institutions Code § 15610.30 (defining financial elder abuse).  However, because both Dougherty-Elofson and Milo were Arizona residents at the time of the alleged solicitation and embezzlement, California statutes do not apply.

Elofson also argues that the embezzlement was aimed at California because he had a "beneficiary interest" in Milo's estate and he resides in California.  Even if Dougherty-Elofson knew that embezzlement of *Milo's* funds might injure *Elofson* in some way, such knowledge does not establish that Dougherty-Elofson's alleged embezzlement of an Arizona resident's funds in Arizona was expressly *aimed* at California.  "[M]ere injury to a forum resident is not a sufficient connection to the forum" to establish personal jurisdiction.  *Walden*, 134 S. Ct. at 1125.  Thus Elofson has failed to satisfy the "expressly aimed" prong of the *Calder* effects test.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    To the extent that Dougherty-Elofson's telephone call and emails with Elofson, a

2  California resident, can be considered independent intentional acts that were aimed at California,

3  those acts – as distinguished from the embezzlement itself – did not harm Elofson, as discussed

4  below.

5              c.         **Causing Harm Likely to be Suffered in the Forum State**

6    The final prong of the *Calder* test requires the plaintiff to show that the defendant caused

7  harm that the defendant knows is likely to be suffered in the forum state.  As discussed above,

8  Elofson has not shown that Dougherty-Elofson's alleged embezzlement of Milo's funds was

9  aimed at California.  Even if Elofson had made that showing, he has not established that the

10  embezzlement harmed him.  Elofson argues that the embezzlement harmed him because he had a

11  "beneficiary interest" in Milo's estate.  To the extent that Elofson is arguing that he would have

12  inherited the funds had they not been embezzled, Elofson has not submitted evidence that he is

13  Milo's heir and any speculation that the funds would have remained in Milo's estate absent the

14  embezzlement is just that – speculation.  Finally, even if Elofson had shown that the

15  embezzlement caused him harm, "[t]he proper question is not where the plaintiff experienced a

16  particular injury or effect but whether the defendant's conduct connects him *to the forum* in a

17  meaningful way."  *Walden*, 134 S. Ct. at 1125 (emphasis added).  Any incidental injury that

18  Elofson may have suffered as a result of one Arizona resident, Dougherty-Elofson, embezzling

19  funds from another Arizona resident, Milo, is insufficient to connect Dougherty-Elofson to

20  California in a meaningful way.

21    Finally, to the extent that Dougherty-Elofson's telephone conversation and emails with

22  Elofson are sufficient to satisfy the first two prongs of the effects test, they are insufficient to

23  satisfy the third prong because those communications did not harm Elofson.  Elofson makes clear

24  in the FAC and the briefing on Dougherty-Elofson's motion that he rejected her solicitations of

25  wrongdoing in no uncertain terms.  Thus the communications, as distinct from the alleged

26  embezzlement itself, do not satisfy the purposeful direction prong of *Schwarzenegger*.

27         **2.       Arising Out Of**

28    The Ninth Circuit has dubbed the second prong of *Schwarzenegger's* specific jurisdiction

9

inquiry as the "but for test." *In re Western States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013). "Under the 'but for' test, a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action." *Id.* (internal quotation marks and citation omitted). That test is not satisfied here because to the extent that Elofson's claims against Dougherty-Elofson for breach of duty (Claim 5), trafficking (Claim 13), and RICO violations (Claim 14) arise out of Dougherty-Elofson's alleged embezzlement of funds in Arizona, such embezzlement does not constitute a contact with California for the reasons discussed above. Moreover, Dougherty-Elofson's alleged embezzlement of Milo's funds was certainly not dependent on any act completed by Elofson, as evidenced by his alleged refusal to participate in the scheme.

### 3.    Reasonableness

Elofson has not met his burden to make out a prima facie case on the first two *Schwarzenegger* prongs. Accordingly the burden does not shift to Dougerty-Elofson to address the reasonableness of requiring her to defend this suit in California. Moreover, given that the record does not suggest any meaningful contacts between Dougherty-Elofson and California, this Court's exercise of personal jurisdiction over her would be unreasonable.

### B.    RICO's "Ends of Justice" Provision

Under 18 U.S.C. § 1965(b), a district court may exercise personal jurisdiction over non-resident participants in an alleged RICO conspiracy, even if those parties otherwise would not be subject to the court's jurisdiction, if "the ends of justice" so require. This "ends of justice" provision permits a court, consistent with the purpose of the RICO statute, to "enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial." *Butcher's Union Local No. 498, United Food & Comm. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986). This power is not unlimited, however. In order for a court to exercise personal jurisdiction through the "ends of justice" provision, "the court must have personal jurisdiction over at least one of the participants in the alleged multi-district conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged coconspirators." *Id.* at 539.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Elofson asserts a single claim under RICO (Claim 14), in which he alleges that Dougherty-

2    Elofson, Bivens, Theut, Scaringelli, and McCollum engaged in a pattern of racketeering activity.

3    FAC ¶¶ 586-605, ECF 29.  Elofson acknowledges that all five of the alleged conspirators are

4    residents of Arizona.  FAC ¶ 119.[4]  Because the United States District Court for the District of

5    Arizona would have personal jurisdiction over all the alleged coconspirators, the "ends of justice"

6    provision does not apply.

7    Elofson asserts that he could amend his pleading to allege that Mudd and Community

8    Hospital, both California residents, are RICO coconspirators.  Elofson contends that if such an

9    amendment were permitted, the "ends of justice" provision would apply because this Court then

10   would have personal jurisdiction over at least one coconspirator and this would be the only district

11   in which all of the alleged coconspirators could be sued.  However, Elofson has not offered any

12   facts to suggest that he plausibly could allege that Mudd and Community Hospital participated in a

13   RICO conspiracy with the Arizona residents.

14   Indeed, any such allegations would be inconsistent with the allegations set forth in the

15   current FAC.  For example, Elofson alleges that McCollum and Scaringelli "falsely reported" to

16   Mudd that Elofson "was responsible for missing monies from Milo Elofson's estate and that

17   Plaintiff Elofson therefore had financially abused Milo Elofson."  FAC ¶ 313, ECF 29.  Elofson

18   also alleges that when Mudd and six Monterey police officers "stormed" Elofson's residence and

19   removed Milo to a medical facility, "Mudd claimed that Defendants McCollum and Scaringelli

20   indicated that there were missing monies from Milo Elofson's estate because of Plaintiff Elofson."

21   *Id.* ¶ 314.  Elofson alleges that "Scaringelli offered this as a statement of fact" even though

22   "Stephanie McCollum and Lawrence Scaringelli knew it was false."  *Id.* ¶ 458.  He also asserts

23   that the false statements of McCollum and Scaringelli "were the single proximate cause of several

24   Monterey County police officers descending on Greg's and Milo's abode."  *Id.* ¶ 459.

25   Elofson repeats these allegations in various forms throughout the FAC, alleging for

26

27   ───────────────

28   [4] The parties' residences are listed in an unnumbered paragraph subheaded "PARTIES" located
     between paragraph 119 and 120.  *See* FAC at pp. 40-41, ECF 29.  For ease reference, the Court
     treats this unnumbered paragraph as part of paragraph 119.

example that "Stephanie McCollum and Lawrence Scaringelli made a false report to a government agency, when they reported to Steve Mudd of Monterey County Adult Protective Services that Greg Elofson was responsible for missing monies, taken from Milo Elofson." *Id.* ¶ 463.  Elofson makes clear that Mudd was "[a]cting on Stephanie McCollum's and Lawrence Scaringelli's statements" when Mudd "acted to confine Milo Elofson within the Natividad Medical Center." *Id.* ¶ 464.  Given these allegations that McCollum and Scaringelli lied to Mudd *and* that Mudd relied on those lies in bringing Monterey police officers to seize Milo, Elofson could not plausibly allege that in fact Mudd was not relying in good faith on information received from McCollum and Scaringelli but actually was a RICO coconspirator.  *See Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) ("A party cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding.") (internal quotation marks, citation, and brackets omitted).

The FAC contains similar allegations regarding Community Hospital, for example, that "Defendants McCollum and Scaringelli [committed] the second act of Wire Fraud by communicating to Community Memorial Hospital that Plaintiff Elofson had 'kidnapped' Milo Elofson, which is elder abuse, and per se defamation."  FAC ¶ 681, ECF 29.  The FAC also alleges that "Milo was put in isolation at Community Medical Center in Ventura California, at the orders of Defendants McCollum and Scaringelli." *Id.* ¶¶ 565, 641.  Given these allegations that McCollum and Scaringelli informed Community Hospital that Elofson had kidnapped Milo, and that Community Hospital followed the direction of McCollum and Scaringelli in isolating Milo from Elofson, Elofson could not plausibly allege that in fact Community Hospital did not rely on McCollum and Scaringelli but rather was a RICO coconspirator.  *See Airs Aromatics*, 744 F.3d at 600.

Accordingly, the "ends of justice" provision does not apply and Elofson could not plausibly amend his pleading to add facts that would trigger application of the provision.

**C.    Conclusion**

In conclusion, Elofson has neither satisfied his burden of making out a prima facie case of personal jurisdiction under California's long-arm statute nor demonstrated that personal

United States District Court
Northern District of California

1  jurisdiction lies under RICO's "ends of justice" provision.  Consequently, Dougherty-Elofson's

2  motion to dismiss for lack of personal jurisdiction is GRANTED.

3  **III.  BIVENS**

4      Elofson sues Bivens, his former attorney, for relief from judgment (Claim 1), attorney

5  malpractice (Claim 6), trafficking (Claim 13), and RICO violations (Claim 14).  She seeks

6  dismissal under Rule 12(b)(2) for lack of personal jurisdiction.  Bivens submits her own

7  declaration stating that she resides in Arizona; is licensed to practice law only in Arizona and does

8  practice in Arizona; does not own property, advertise, attend trade shows, or conduct business in

9  California; and has traveled to California only for short vacations.  Bivens Decl. ¶¶ 3-7, ECF 71.

10  Elofson does not dispute any of those facts.  Instead, he argues that Bivens is subject to personal

11  jurisdiction in this Court under both California's long-arm statute and RICO's "ends of justice"

12  provision, 18 U.S.C. § 1965(b).

13      **A.  California's Long-Arm Statute**

14          **1.  Purposeful Direction or Availment**

15      Because Elofson's attorney malpractice claim against Bivens sounds in tort and his other

16  claims against her are more in the nature of torts than contracts, a purposeful direction analysis is

17  appropriate.  As set forth above, under that test, "a defendant purposefully directed his activities at

18  the forum if he:  (1) committed an intentional act, (2) expressly aimed at the forum state, (3)

19  causing harm that the defendant knows is likely to be suffered in the forum state."  *Picot*, 780 F.3d

20  at 1212.

21              **a.  Commission of an Intentional Act**

22      Under the *Calder* effects test, Elofson first must demonstrate that Bivens committed an

23  intentional act.  Elofson contends that Bivens committed the following intentional acts:  she

24  maintains a nationwide website which utilizes "viral marketing"; contracted to represent Elofson

25  in the Arizona guardianship and conservatorship proceedings; communicated with Elofson by

26  telephone and email regarding that representation; submitted to the Arizona state courts documents

27  that Elofson had notarized in California; and filed forged documents in the Arizona proceedings.

28      As evidence of those intentional acts, Elofson submits a request for judicial notice

United States District Court
Northern District of California

13

United States District Court
Northern District of California

accompanied by several documents, including screen shots of what appear to be a website

maintained by Bivens' law firm, a fee agreement between Elofson and Bivens' law firm, email

communications between Elofson and Bivens, and documents relating to Milo's guardianship

proceedings.  *See* Pl.'s RJN, ECF 87.  Bivens objects to Elofson's request for judicial notice,

asserting that the proffered documents are not appropriate subject matter for judicial notice.  The

Court agrees and thus denies the request for judicial notice.  Moreover, the documents are

inadmissible, as they are not authenticated.  However, even if it were to consider all of the

documents submitted by Elofson, and to assume that Bivens committed each of the asserted acts,

the Court would conclude that Elofson has failed to show purposeful direction under the *Calder*

effects test for the reasons discussed below.

### b.        Expressly Aimed at the Forum State

Elofson has failed to show that Bivens' intentional acts, described above, were expressly

aimed at California.  Elofson contends that Bivens' law firm expressly aimed marketing efforts at

California by means of the firm's interactive website.  The Ninth Circuit has "struggled with the

question whether tortious conduct on a nationally accessible website is expressly aimed at any, or

all, of the forums in which the website can be viewed."  *Mavrix Photo, Inc. v. Brand Techs., Inc.*,

647 F.3d 1218, 1229 (9th Cir. 2011).  It is clear that merely operating a passive website that is

accessible in the forum state does not satisfy the express aiming prong of the effects test.  *Id.*

However, "operating even a passive website in conjunction with something more – conduct

directly targeting the forum – is sufficient." *Id.* (internal quotation marks and citations omitted).

When considering whether a nonresident defendant has done something more, the Ninth Circuit

has "considered several factors, including the interactivity of the defendant's website, the

geographic scope of the defendant's commercial ambitions, and whether the defendant

individually targeted a plaintiff known to be a forum resident."  *Id.* (internal quotation marks and

citations omitted).

Based on this record, it does not appear that the firm's website is particularly interactive.

Bivens states in her declaration that potential clients may submit their name, email address, and

telephone number, and ask a question.  Bivens Decl. ¶ 4, ECF 71.  Bivens responds only to

inquiries based on Arizona law involving Arizona elders.  *Id.*  Bivens practices exclusively in the area of elder law, estate planning, and special needs law.  *Id.* ¶ 3.  Based on the unauthenticated documents submitted by Elofson, it appears that an individual viewing the law firm's website can sign up for an online email, and may forward such online email to others.  *See* Pl.'s RJN, ECF 87.  There is no indication that products may be purchased through the website or that the website offers any special information or incentives to California residents.  There is no indication that Bivens' law firm targets California residents.  To the contrary, Elofson states that he "found defendant Bivens through her website," indicating that he was actively looking for a lawyer to represent him with respect to Milo and searched the Internet for such a lawyer.  Bivens states in her declaration that she is licensed to practice law only in Arizona.  The "something more" required to find personal jurisdiction based on the website is missing.  "If the defendant merely operates a website, even a highly interactive website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution."  *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 881 (N.D. Cal. 2012) (internal quotation marks and citation omitted).

Elofson also asserts that personal jurisdiction may be found based upon Bivens' purposeful availment of the privileges of doing business in California, as evidenced by Bivens' communications with him and use of documents executed and notarized by him in California.  The Ninth Circuit has held that out-of-state legal representation does not, in and of itself, establish purposeful availment of the privilege of conducting business in the forum state.  *Sher v. Johnson*, 911 F.2d 1357, 1363 (9th Cir. 1990).  In *Sher*, Florida attorneys represented a California client in litigation before a Florida court, sent letters and bills to California, and traveled to California several times to meet with their client.  Those acts were not sufficient to establish a California court's personal jurisdiction over the Florida attorneys.  *Id.*  The Court perceives no meaningful distinction between the facts of *Sher* and those in the present case.  Bivens represented Elofson, a California client, in Arizona state court proceedings and communicated with him about those

United States District Court
Northern District of California

15

proceedings.[5] Thus this case is unlike others in which personal jurisdiction has been found based upon the out-of-state attorneys' representation of a California resident *in California proceedings*. *See, e.g., Dillon v. Murphy & Hourihane, LLP*, No. 14-CV-01908-BLF, 2014 WL 5409040, at *9 (N.D. Cal. Oct. 22, 2014).

### c.       Causing Harm Likely to be Suffered in the Forum State

Elofson argues that Bivens' fraud on the Arizona court caused foreseeable harm to him in California because Bivens' conduct was contrary to his express wishes and because he lost his legal rights as Milo's beneficiary and durable power of attorney.  Elofson also argues that he was harmed by Bivens' fees, which harmed his beneficiary interest in Milo's estate.  Even assuming that Elofson did suffer harm in California, as discussed above, such harm was not the result of conduct expressly aimed at California.  Moreover, such harm to Elofson is insufficient to establish personal jurisdiction of Bivens in California absent other meaningful contacts with the forum state. *See Walden*, 134 S. Ct. at 1122.

### 2.       Arising Out Of

As noted above, the inquiry to be asked when considering the "arising out of" prong is whether there is a direct nexus between the claims and the defendant's contacts with the forum state. *See In re Western States*, 715 F.3d at 742.  There is no nexus here, because Elofson's claims for relief from judgment (Claim 1), attorney malpractice (Claim 6), trafficking (Claim 13), and RICO violations (Claim 14) arise from Bivens' representation of him in Arizona and not from any contacts with California.

### 3.       Reasonableness

Elofson has not met his burden to make out a prima facie case against Bivens on the first two *Schwarzenegger* prongs.  Accordingly the burden does not shift to Bivens to address the reasonableness of requiring her to defend this suit in California.  Moreover, given that this record does not suggest any meaningful contacts between Bivens and California, this Court's exercise of personal jurisdiction over her would be unreasonable.

---

[5] Because Bivens never represented Elofson in a California court, Elofson's argument that Bivens put herself within the purview of the California State Bar is without merit.

United States District Court
Northern District of California

1

### B.    RICO's "Ends of Justice" Provision

2        As discussed above, RICO's "ends of justice" provision does not apply, because the FAC

3   alleges that all coconspirators reside in Arizona such that the United States District Court for the

4   District of Arizona would have personal jurisdiction over all coconspirators.

5

### C.    Conclusion

6        In conclusion, Elofson has neither satisfied his burden of making out a prima facie case of

7   personal jurisdiction under California's long-arm statute nor demonstrated that personal

8   jurisdiction lies under RICO's "ends of justice" provision.  Consequently, Bivens' motion to

9   dismiss for lack of personal jurisdiction is GRANTED.

10

## IV.    THEUT

11        Elofson sues Theut, Milo's court-appointed attorney, for relief from judgment (Claim 2),

12   relief from judgment (Claim 3), attorney malpractice (Claim 7), breach of fiduciary duty (Claim

13   8), financial elder abuse (Claim 11), civil rights violations under § 1983 (Claim 12), trafficking

14   (Claim 13), and RICO violations (Claim 14).  Theut seeks dismissal under Rule 12(b)(2) for lack

15   of personal jurisdiction and under Rule 12(b)(3) for improper venue.

16        Theut submits his own declaration stating that he has been an Arizona resident for twenty-

17   nine years, he is licensed to practice law only in Arizona, and his law firm's only office always has

18   been located in Arizona.  Theut Decl. ¶¶ 3-4, ECF 104.  Theut also states that he is not licensed to

19   practice law in California, he does not own property in California, his law firm does not maintain a

20   website or advertise in California, and in undertaking Milo's representation he did not consent to

21   jurisdiction in California.  *Id.* ¶¶ 5-7.  Finally Theut states that he has been to California only

22   during vacation and only during one or two weeks in his lifetime.  *Id.* ¶ 8.  Elofson does not

23   dispute those facts, but he asserts that Theut is subject to personal jurisdiction in this Court under

24   California's long-arm statute and RICO's "ends of justice" provision.  Elofson also argues that

25   venue is proper in this Court.

26

### A.    California's Long-Arm Statute

27

#### 1.    Purposeful Direction or Availment

28        Because Elofson's claims against Theut for attorney malpractice and breach of fiduciary

United States District Court
Northern District of California

1   duty sound in tort and his other claims against Theut are more in the nature of torts than contracts,

2   a purposeful direction analysis is appropriate.  The test for purposeful direction is discussed as

3   follows.

4                           a.      **Commission of an Intentional Act**

5          Under the *Calder* effects test, Elofson must demonstrate that Theut committed an

6   intentional act.  Elofson does not identify any intentional act committed by Theut in his opposition

7   to Theut's motion.  To the contrary, he asserts in his brief that "Theut did nothing to intervene"

8   when Scaringelli and McCollum were "trafficking" Milo.  Pl.'s Opp. at 11, ECF 124.  Elofson also

9   asserts that by aiding and abetting Scaringelli and McCollum, "Theut injected himself into the

10  forum state of California, under *Walden*, engaging the social services function of Monterey

11  County."  *Id.* at 12.  Elofson does not actually state that Theut spoke to any employee of the

12  Monterey County Social Services department.  Nor does he allege as much in his FAC.  All the

13  contacts with Monterey County personnel are alleged to have been made by McCollum and

14  Scaringelli.

15         Because Elofson has the initial burden of making out a prima facie case with respect to

16  purposeful direction, his failure to articulate any commission of an intentional act by Theut is fatal

17  to his assertion of specific jurisdiction over Theut.

18         **B.      RICO's "Ends of Justice" Provision**

19         As discussed above, RICO's "ends of justice" provision does not apply, because the FAC

20  alleges that all coconspirators reside in Arizona such that the United States District Court for the

21  District of Arizona would have personal jurisdiction over all coconspirators.

22         **C.      Conclusion**

23         In conclusion, Elofson has neither satisfied his burden of making out a prima facie case of

24  personal jurisdiction under California's long-arm statute nor demonstrated that personal

25  jurisdiction lies under RICO's "ends of justice" provision.  Consequently, Theut's motion to

26  dismiss for lack of personal jurisdiction is GRANTED.  In light of this ruling, the Court need not

27  reach Theut's alternative motion to dismiss for improper venue.

28

United States District Court
Northern District of California

1   **V.   MUDD**

2        Elofson sues Mudd, the Monterey County Adult Protective Services employee  who

3   allegedly brought six police officers to remove Milo from Elofson's residence in February 2015,

4   only for violation of civil rights under § 1983 (Claim 16).  Mudd seeks dismissal under Federal

5   Rule of Civil Procedure 12(b)(6), arguing that the FAC fails to allege facts sufficient to state a

6   claim upon which relief may be granted and that it appears on the face of the FAC that he is

7   entitled to qualified immunity.

8        **A.        Failure to State a Claim**

9        "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

10   claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation*

11   *Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d

12   729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts

13   as true all well-pled factual allegations and construes them in the light most favorable to the

14   plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the

15   Court need not "accept as true allegations that contradict matters properly subject to judicial

16   notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or

17   unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

18   (internal quotation marks and citations omitted).  While a complaint need not contain detailed

19   factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to

20   relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

21   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the

22   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

23        Claim 16 alleges that Mudd "used the power of the government, Adult Protective Service,

24   which is funded by the United States, to falsely imprison Milo Elofson and deprive him of his

25   liberty . . . without Due Process of Law under the 14th Amendment of the U.S. Constitution."

26   FAC ¶ 647, ECF 29.  Claim 16 goes on to allege that "in sequestering Milo Elofson from his only

27   living family member, Greg Elofson, Steven Mudd violated Greg Elofson's rights to Freedom of

28   Association under the 14th Amendment of the United States Constitution."  *Id.* ¶ 648.

1        To the extent that Elofson seeks redress for Milo's alleged false imprisonment, Mudd

2   requests that the Court take judicial notice of documents filed in the Arizona state court.  *See*

3   Mudd's RJN, ECF 48-1.  That request is granted.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,

4   442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other

5   matters of public record.").  The Arizona filings show that Elofson did not have legal custody of

6   Milo when Mudd allegedly falsely imprisoned him; Elofson had removed Milo from Arizona to

7   California in violation of court orders.  *See* Mudd's RJN, ECF 48-1.  Accordingly, because

8   Elofson was not Milo's conservator at the time in question, and did not have legal custody of

9   Milo, he lacks standing to bring a § 1983 claim on Milo's behalf for false imprisonment without

10  due process of law.  *See Collins v. West Hartford Police Dep't*, 324 Fed. App'x 137, 139 (2d Cir.

11  2009).  Accordingly, Mudd's motion to dismiss Claim 16 to the extent it is based on Milo's

12  alleged false imprisonment is GRANTED.

13       To the extent that Elofson seeks redress for deprivation of Milo's company, "[t]he

14  substantive due process right to family integrity or to familial association is well established."

15  *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011).  A child may assert a

16  Fourteenth Amendment due process claim if he or she is deprived of the companionship and

17  society of a parent through official conduct.  *Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d

18  1062, 1075 (9th Cir. 2013).  "Only official conduct that shocks the conscience is cognizable as a

19  due process violation."  *Id.* (internal quotation marks and citation omitted).  As noted above, the

20  records submitted by Mudd establish that Elofson removed Milo from Arizona in violation of state

21  court orders and without permission of Milo's duly appointed guardian and conservator,

22  McCollum.  Under those circumstances, Mudd's actions – removing Milo from Elofson's custody

23  and taking him to a medical facility for evaluation – cannot be said to shock the conscience.

24  Elofson argues that "having six police officers storm your home, take away your father to a

25  location unknown, demanding that you do not follow or try to find him, *does* shock the

26  conscience."  Pl.'s Opp. at 11, ECF 56.  The Court has not located a single case suggesting that

27  Mudd's utilization of local authorities to retrieve Milo shocks the conscience.  However, even

28  assuming for purposes of this motion that Elofson's allegations are sufficient to make out a

United States District Court
Northern District of California

20

constitutional violation, Mudd is entitled to qualified immunity for the reasons discussed below.

### B.    Qualified Immunity

Mudd argues that even if the Court were to conclude that Elofson has stated a viable claim for relief, dismissal is appropriate on the ground of qualified immunity.  "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Dunn v. Castro*, 621 F.3d 1196, 1198-99 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  In analyzing whether a government official is entitled to qualified immunity, the court looks at two distinct questions:  (1) whether the facts alleged, construed in the light most favorable to the injured party, establish the violation of a constitutional right; and (2) whether the right was clearly established such that a reasonable government official would have known that his conduct was unlawful in the situation he confronted.  *Id.* at 1199.  Courts may exercise their discretion in deciding "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan,* 555 U.S. 223, 242 (2009).

"[T]he Supreme Court has 'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'"  *Dunn*, 621 F.3d at 1199 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)).  "Qualified immunity confers upon officials a right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery."  *Id.* (internal quotation marks and citations omitted).  Although the first prong of the qualified immunity analysis calls for a factual inquiry, the second prong "is solely a question of law for the judge."  *Id.* (internal quotation marks and citations omitted).  "As to the second prong, the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* (internal quotation marks, citation, and brackets omitted).

"A court, when deciding whether there has been a violation of a clearly established right for qualified immunity, must strike the proper balance in defining that right."  *Dunn*, 621 F.3d at 1200.  If the right is defined too generally, it will bear no relationship to the objective legal

United States District Court
Northern District of California

reasonableness that is the touchstone of the inquiry.  *Id.*  "[T]he right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Id.* (internal quotation marks and citation omitted).

Here, the FAC alleges that "Stephanie McCollum and Lawrence Scaringelli made a false report to a government agency, when they reported to Steve Mudd of Monterey County Adult Protective Services that Greg Elofson was responsible for missing monies, taken from Milo Elofson."  FAC ¶ 463, ECF 29.  The FAC alleges expressly that Mudd was "[a]cting on Stephanie McCollum's and Lawrence Scaringelli's statements" when Mudd "acted to confine Milo Elofson within the Natividad Medical Center."  *Id.* ¶ 464.  The Arizona state court documents of which the Court takes judicial notice show that McCollum was Milo's duly appointed guardian and conservator and that Scaringelli was her counsel.  *See* Mudd's RJN, ECF 48-1.  Thus, addressing the second prong of the qualified immunity analysis only, the question presented by Mudd's motion is whether it was clearly established in February 2015 that an individual who removes an elder relative from his home state in violation of court order, contrary to the wishes of the elder's court-appointed conservator, has a right to retain physical custody of the elder and be free from the efforts of Adult Protective Services and local law enforcement, acting on the directive of the conservator and on court-approved conservatorship papers, to investigate and obtain a medical evaluation of the elder.  Elofson has not cited any cases, and the Court has discovered none, indicating that such right was clearly established.  Accordingly, even assuming that Elofson has stated a viable claim against Mudd for a constitutional violation, Mudd is entitled to dismissal based on qualified immunity.

### C.     Conclusion

Elofson's only claim against Mudd, Claim 16, fails to state a claim upon which relief may be granted.  Moreover it is clear that Mudd is entitled to qualified immunity on Claim 16.  Finally, in light of Mudd's entitlement to qualified immunity, amendment would be futile.  Accordingly, Mudd's motion to dismiss under Rule 12(b)(6) is GRANTED WITHOUT LEAVE TO AMEND.

United States District Court
Northern District of California

## VI.   COMMUNITY HOSPITAL

Elofson sues Community Hospital, located in Ventura County, which barred Elofson from seeing Milo and ultimately returned Milo to his conservator, McCollum, for civil rights violations under § 1983 (Claim 17) and defamation (Claim 18).  Community Hospital seeks dismissal for improper venue under Rule 12(b)(3) and failure to state a claim under Rule 12(b)(6).

### A.   Improper Venue

A defense of improper venue may be raised by motion under Federal Rule of Civil Procedure 12(b)(3).  When venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).  The plaintiff bears the burden of showing that venue is proper.  *See Piedmont Label Co. v. Sun Garden Packing Co.,* 598 F.2d 491, 496 (9th Cir. 1979) ("Plaintiff had the burden of showing that venue was properly laid in the Northern District of California."). "When the plaintiff asserts multiple claims, it must establish that venue is proper as to each claim." *Kaia Foods, Inc. v. Bellafiore*, 70 F. Supp. 3d 1178, 1183 (N.D. Cal. 2014).  "However, where venue exists for the principal claim, federal courts will also adjudicate closely related claims, even if there is no independent source of venue for the related claims."

Venue is governed by 28 U.S.C. § 1391(b), which provides as follows:

(b) Venue in general.--A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Elofson does not argue in his opposition brief that any of these subsections applies here. Subsection (b)(1) clearly does not apply because not all defendants are residents of California, the state in which this judicial district is located.  Nor does subsection (b)(2) apply, as the only events

United States District Court
Northern District of California

described in the FAC which occurred in the Northern District of California are those relating to Defendant Mudd.  Those events make up a very small part of the overall circumstances giving rise to this action, which is illustrated by the fact that Mudd is named in only one of the twenty-one claims asserted in the FAC.  Consequently, Elofson cannot show that "a substantial part of the events" giving rise to the action occurred in this judicial district.  Finally, with respect to (b)(3), Elofson bears the burden of establishing that venue is proper on the basis that there is no other judicial district in which venue would be proper.  *See Piedmont Label Co.,* 598 F.2d at 496. Elofson has not attempted to meet this burden.  Instead, he argues that venue is proper under RICO's "ends of justice" provision.  That argument is without merit for the reasons discussed above.

The Court has considered whether it would be more appropriate to dismiss the action or transfer it to the United States District Court for the Central District of California, the district in which Community Hospital is located.  If the only claims remaining in the case were asserted against Community Hospital, the Court would be inclined to transfer the case.  However, Elofson also has claims remaining against McCollum, an Arizona resident who may not be amenable to suit in the Central District of California.[6]  The Court therefore concludes that transfer of the entire action to the Central District would be inappropriate, and that dismissal is warranted under the particular facts of this case.

Accordingly, Community Hospital's motion to dismiss for improper venue is GRANTED.

**B.      Failure to State a Claim**

In light of its ruling that Community Hospital is entitled to dismissal for improper venue, the Court need not address Community Hospital's motion to dismiss for failure to state a claim.

**C.      Conclusion**

Community Hospital's motion to dismiss for improper venue is GRANTED.

---

[6] Since McCollum has not moved to dismiss the FAC, the Court has not had occasion to determine whether she is subject to personal jurisdiction in California or where venue might be proper with respect to claims against her.  It appears that McCollum has not yet been served with the Summons and FAC.

United States District Court
Northern District of California

### VII.   SCARINGELLI

Elofson sues Scaringelli, counsel for Milo's guardian and conservator, McCollum, for relief from Arizona state court orders (Claims 3 and 4), breach of fiduciary duty (Claim 8), defamation (Claim 9), negligent infliction of emotional distress (Claim 10), financial elder abuse (Claim 11), violation of civil rights under § 1983 (Claims 12 and 19), trafficking (Claim 13), RICO violations (Claim 14), abuse of process (Claim 15), and wire fraud (Claim 21).  Scaringelli seeks dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for lack of personal jurisdiction under Rule 12(b)(2).  He also brings a special motion to strike under California Code of Civil Procedure § 425.16.

Scaringelli submits his own declaration stating that he resides in Arizona, he is admitted to practice law only in Arizona, and he has never practiced law in a state other than Arizona. Scaringelli Decl. ¶ 25, ECF 107.  He states that he does not own property in California, operate a business in California, or advertise in California.  *Id.* ¶ 26.  His contacts with California are limited his residency there between 1988 and 1991 while he attended law school.  *Id.* ¶ 25.  Elofson does not dispute any of those facts, but he argues that federal subject matter exists and that Scaringelli is subject to personal jurisdiction in this Court under California's long-arm statute and RICO's "ends of justice" provision.

### A.   Subject Matter Jurisdiction

A party may challenge the Court's subject matter jurisdiction by bringing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the movant asserts that the lack of subject matter jurisdiction is apparent from the face of the complaint.  *Id.*  In a factual attack, the movant disputes the truth of allegations that otherwise would give rise to federal jurisdiction.  *Id* "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Id.*  "The court need not presume the truthfulness of the plaintiff's allegations."  *Id.*  Once the moving party has presented evidence demonstrating the lack of subject matter jurisdiction, the party opposing the motion must present affidavits or

United States District Court
Northern District of California

1   other evidence sufficient to establish subject matter jurisdiction.  *Id.*  Such evidence must be

2   admissible.  *Ou-Young v. Rea*, No. 5:13-CV-03118-PSG, 2013 WL 5934674, at *2 (N.D. Cal.

3   Nov. 4, 2013) (citing *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir.

4   2000)).

5         Scarengelli's challenge to subject matter jurisdiction appears to be a factual one, as he

6   submits a significant amount of documentary evidence for the Court's consideration.  Scaringelli

7   asks the Court to take judicial notice of documents filed in the United States District Court for the

8   Central District of California, where Elofson previously litigated claims similar to those brought

9   here.  *See* Scaringelli RJN, ECF 108.  That request is granted.  *See Reyn's Pasta Bella, LLC v.*

10  *Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court

11  filings and other matters of public record.").  The Court also considers the documents attached to

12  Scaringelli's declaration, which are properly authenticated.  *See* Scaringelli Decl., ECF 107.

13  Taken together, those documents give a fairly detailed picture of Scaringelli's involvement in the

14  Arizona guardianship and conservatorship proceedings in his role as counsel for McCollum.

15        Elofson in turn asks the Court to take judicial notice of numerous documents that he

16  attaches to his opposition brief.  *See* Pl.'s Opp., ECF 122, Pl.'s RJN, ECF 123.  Those documents

17  are not properly authenticated.  Thus they are not considered by the Court except insofar as they

18  are court records of which the Court may take judicial notice.  *See Reyn's Pasta Bella,* 442 F.3d at

19  746 n.6.

20        Turning to the substance of Scaringelli's claim, he asserts that this record makes clear that

21  the present action is a de facto appeal of the numerous Arizona state court rulings that were

22  adverse to Elofson.  Scaringelli points out that this Court previously ruled that it lacked subject

23  matter jurisdiction over the federal claims alleged in Elofson's original complaint, all of which

24  sought relief from Arizona state court orders.  *See Order Denying Plaintiff's Motion for*

25  *Appointment of Counsel; Denying Plaintiff's Application for a Temporary Restraining Order; and*

26  *Granting Plaintiff's Motion for Leave to File an Amended Complaint ("Prior Order")*, ECF 23.

27  The Court's ruling was based on the *Rooker-Feldman* doctrine, under which a federal district court

28  lacks authority to review the final determinations of a state court in judicial proceedings.  *See Dist.*

1  *of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*,

2  263 U.S. 413, 415-16 (1923).  Scaringelli quotes extensively from the Prior Order, finding a

3  *Rooker-Feldman* bar with respect to the complaint's federal claims and indicating that absent a

4  viable federal claim the Court would decline to exercise supplemental jurisdiction over the

5  complaint's state law claims.  *See* Scaringelli Mot. at 2-3.  Although Elofson subsequently filed

6  the operative FAC, Scaringelli contends that the amendments do not change the nature of

7  Elofson's claims.

8        The Court agrees.  Elofson has added what amounts to a scholarly discussion of the

9  *Rooker-Feldman* doctrine to his pleading.  However, his thorough discussion of many cases

10  addressing that doctrine does not alter this Court's conclusion that all of his federal claims are

11  barred by the doctrine.  The purpose of the *Rooker-Feldman* doctrine "is to protect state judgments

12  from collateral federal attack.  Because district courts lack power to hear direct appeals from state

13  court decisions, they must decline jurisdiction whenever they are 'in essence called upon to review

14  the state court decision.'"  *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th

15  Cir. 2001) (quoting *Feldman*, 460 U.S. at 482 n.16).  The *Rooker-Feldman* doctrine precludes not

16  only review of decisions of the state's highest court, but also those of its lower courts.  *See*

17  *Dubinka v. Judges of Superior Court*, 23 F.3d 218, 221 (9th Cir. 1994).

18        "*Rooker-Feldman* may also apply where the parties do not directly contest the merits of a

19  state court decision, as the doctrine prohibits a federal district court from exercising subject matter

20  jurisdiction over a suit that is a de facto appeal from a state court judgment."  *Reusser v. Wachovia*

21  *Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) (internal quotation marks and citation omitted).  "A

22  federal action constitutes such a de facto appeal where claims raised in the federal court action are

23  inextricably intertwined with the state court's decision such that the adjudication of the federal

24  claims would undercut the state ruling or require the district court to interpret the application of

25  state laws or procedural rules."  *Id.* (internal quotation marks and citation omitted).

26        As discussed above, Elofson's claims against most defendants are subject to dismissal for

27  lack of personal jurisdiction, failure to state a claim, and improper venue.  All of his remaining

28  federal claims – those asserted against Scaringelli and those asserted against McCollum – depend

United States District Court
Northern District of California

1    upon the asserted invalidity of the Arizona state court orders regarding Milo's guardianship and

2    conservatorship.  Claims 3 and 4, brought under Federal Rule of Civil Procedure 60, directly

3    request that this Court set aside the Arizona state court orders as null and void.  Claims 12 and 19,

4    asserted under § 1983, allege that the Arizona state court proceedings deprived Plaintiff and Milo

5    of due process and free association rights protected under the Fourteenth Amendment.  Claim 13

6    for trafficking and Claim 14 for RICO violations allege that Defendants' control over Milo's

7    assets and person pursuant to the Arizona state court orders constitute human trafficking and

8    racketeering activity.  Claim 21 for wire fraud alleges that McCollum and Scaringelli committed

9    wire fraud when they asserted McCollum's rights as Milo's guardian and conservator in

10   communications to Mudd and Community Hospital.  All of these claims are inextricably

11   intertwined with the Arizona state court proceedings and resulting orders and therefore are subject

12   to dismissal under the *Rooker-Feldman* doctrine for lack of subject matter jurisdiction..

13       Having concluded that all federal claims remaining in the FAC are subject to dismissal, the

14   Court declines to exercise supplemental jurisdiction over the state law claims asserted in the FAC.

15   "A district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims

16   over which it has original jurisdiction.'"  *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th

17   Cir. 2010) (quoting 28 U.S.C. § 1367(c)(3)).  "'[I]n the usual case in which all federal-law claims

18   are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction

19   doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to

20   exercise jurisdiction over the remaining state-law claims.'"  *Id.* (quoting *Carnegie-Mellon Univ. v.

21   Cohill*, 484 U.S. 343, 350 n. 7 (1988)).  Here, the case is in its early stages.  The Court has issued

22   several orders in the case denying Elofson's motions with respect to appointment of counsel,

23   temporary injunctive relief, and the like.  However, the present order is the first to address motions

24   to dismiss.  Under these circumstances, the Court perceives no reason to exercise supplemental

25   jurisdiction over Elofson's state law claims.

26       **B.    Personal Jurisdiction and Special Motion to Strike**

27       In light of the Court's determination that Scaringelli is entitled to dismissal for lack of

28   subject matter jurisdiction, the Court need not reach his alternative motion to dismiss for lack of

United States District Court
Northern District of California

personal jurisdiction.  Moreover, Scaringelli's papers indicate that if it dismisses the claims against him, the Court need not reach his special motion to strike under California Code of Civil Procedure § 425.16.  The Court therefore deems that motion to be withdrawn.

### C.     Conclusion

Scaringelli's motion to dismiss for lack of subject matter jurisdiction is GRANTED.

## VIII.  LEAVE TO AMEND

The Court has reviewed carefully all of Elofson's arguments, which he has presented quite articulately in his briefing and at the hearing on this matter, and has given careful consideration to whether Elofson might be able to cure the defects noted herein if granted leave to amend.  The Court concludes that he could not.  The Court has determined that it lacks personal jurisdiction over most of the defendants, and there is no indication on this record that jurisdictional discovery could reveal facts that would alter that determination.  As to the two defendants over whom the Court clearly has personal jurisdiction, Mudd and Community Hospital, Mudd has established entitlement to dismissal based on qualified immunity, a defect that could not be cured by amendment.  Community Hospital has established entitlement to dismissal for lack of proper venue, and there is no indication on this record that amendment could alter that analysis.  Finally, Scaringelli has demonstrated that all of the remaining federal claims in the FAC are barred by the *Rooker-Feldman* doctrine, again, a defect that could not be cured by amendment.  Accordingly, leave to amend is DENIED as to all moving parties.

It is apparent from the record and from the passion with which Elofson has pursued this lawsuit that he cared deeply for his father, Milo.  The Court has no doubt that he believes sincerely that injustice has been done and that redress is due.  This Court simply is not the proper forum for Elofson's efforts.

## IV.   ORDER

For the reasons discussed above,

(1)     Defendant Dougherty-Elofson's motion to dismiss for lack of personal jurisdiction is GRANTED WITHOUT LEAVE TO AMEND;

(2)     Defendant Bivens' motion to dismiss for lack of personal jurisdiction is

United States District Court
Northern District of California

1       GRANTED WITHOUT LEAVE TO AMEND;

2   (3)   Defendant Theut's motion to dismiss for lack of personal jurisdiction is

3       GRANTED WITHOUT LEAVE TO AMEND;

4   (4)   Defendant Mudd's motion to dismiss on the basis of qualified immunity is

5       GRANTED WITHOUT LEAVE TO AMEND;

6   (5)   Defendant Community Hospital's motion to dismiss for improper venue is

7       GRANTED WITHOUT LEAVE TO AMEND;

8   (6)   Defendant Scaringelli's motion to dismiss for lack of subject matter jurisdiction is

9       GRANTED WITHOUT LEAVE TO AMEND.

11   Dated:  February 13, 2017

12       _____
         BETH LABSON FREEMAN
13       United States District Judge

United States District Court
Northern District of California